Good morning, Your Honors. My name is Amanda Sheridan, and I'm an attorney with the City of Peoria, and I'm here today representing Sgt. Matthew Miller, who's here today in the courtroom. May it please the Court, I've tried to reserve two minutes for rebuttal. All right. Thank you, Counsel. Thank you. Your Honors, Samuel Denk has admitted multiple times under oath that after being pulled over by Sgt. Miller with both a meth pipe and a gun in his lap, that instead of reaching towards the steering wheel as he was ordered to do, he slid his right hand backwards towards his crotch area. That's his word, not mine, Your Honors. Exactly where his gun was located. This is the only fact that is material today to this Court in deciding whether a reasonable officer in Sgt. Miller's position would have feared for his life in that moment, and was therefore justified in pulling the trigger. What about — I mean, they have this one picture in the excerpts of record where you do see the hand, and they've obviously highlighted it going up. What — how do you address that? Your Honors, a few points to that. First, this Court and the Supreme Court has always said that body-worn camera footage or manipulated or altered footage is not to be used to determine what the officers saw at the time of the events. So anytime we take body-worn camera footage, slow it down, play it frame by frame, we can minutely try and parse out exactly where a hand is going. There may be an issue of what the officers saw, but are you saying that when the Court reviews the video, can we slow it down and see whether or not we can see more carefully what actually happened? You can, Your Honor. However — Can we change the brightness of it, too? Yes, Your Honor. You may do all those things. However — I can tell you, when I slowed the video down and I increased the brightness, you can see after the hand goes back, you then see it go up. But you do — it does go back, and then it goes up. Right. And my point to that would be that by then, Sergeant Miller has already seen the hand sliding backwards towards the gun, and he's already made that conscious decision to shoot. And once you start making — there's experts who can testify to once you start making that impulse, and you've already started to pull the trigger, there's no turning back from that. So it very well may be that right before he was — right before the gun struck — the bullet struck Mr. Dink, that maybe he was trying to raise his hand up at that point. But what Sergeant Miller saw in his 15 years of patrol experience was a person that he told, put your hands on the steering wheel. And instead of doing it, his hand went backwards. Counsel, does that raise an issue of fact that needs to be resolved by the jury? No, Your Honor. Why not? Because this case is very different from the case that this Court heard earlier this week, Rose v. Farney. This is not a case where the officer shot the suspect, the suspect died, and then it becomes only the officer's word against the BWC footage. Here we have the BWC footage, which shows the traffic stop and the shooting, but Dink's gun can never be seen, even though we all admit it was there. And we can't see exactly where his right hand is at every given moment, and that's partly because Sergeant Miller is very tall. His eyes were up here, but the camera was here on his chest level. In fact, the District Court made a finding in its order on page 5, where that Court stated, it is unclear from the video where plaintiff's hands are. So we can't really rely on the BWC footage here, but we don't need it here, because what we have here are two consistent statements by both Sergeant Miller and Samuel Dink that he did move his hand backwards towards the gun. Now, he disputes whether he was actually reaching for the gun, but this case is very similar to the case that this Court decided. It's an unpublished case, but it's called Ammons v. Tindall, and I believe Judge Collins took part in that decision. In that case, out of all the cases that I've looked at in preparation for this case, it was the most close to the facts in this case. Well, Counsel, I'm not persuaded by unpublished opinions, so if that's your best authority, it's not persuasive to me. It's not my best authority, Your Honor. I would also direct the Court's attention to Cruz v. City of Anaheim. This Court has said, when a suspect is armed, even a furtive movement can create an immediate threat sufficient to justify the use of deadly force. The Court said this in George v. Morris, and then that it would be unquestionably reasonable for police to shoot a suspect if he reaches for a gun in his waistband, or even if he reaches there for some other reason. In other words, the fact that Dink is going to try to raise today that he didn't intend to reach for the gun is irrelevant. What's relevant here is that his right hand reached backwards in the area where the gun was located. It was reasonable in that tense, rapidly evolving situation for Sergeant Miller to see his hand moving backwards towards the gun and fear for his life in that moment. Now, Dink states in his answering brief on page 13 that reaching for the weapon, as Miller asserts, and moving a hand towards a person's crotch are not the same thing, even if a weapon is located in the person's lap. I agree. But the difference there is the intent. And as the Court knows, there's a long line of cases that says intent doesn't matter in these cases. It certainly mattered at Mr. Dink's criminal trial. He got up at his criminal trial and testified that, yes, he had moved his hand backwards towards the gun, but that he had no intent to reach for the gun. Okay. And he was acquitted of the aggravated assault charge. But that doesn't matter in this analysis. In this analysis, Dink's intent was irrelevant. All we knew and all Sergeant Miller knew at the time was that there was a gun in the suspect's lap and that he disobeyed his command to put his hands on the steering wheel and instead slid it backwards. Now, the District Court seemed to focus a lot on the amount of time that passed between the first warning and the time of the shooting. However, this Court, neither this Court nor the Supreme Court, has ever said there's a magic number of seconds that a police officer must wait in the face of an imminent threat before he or she defends themselves. It has to be a flexible standard because the Court recognizes that every situation will be just a little bit different. So that's why the Graham Standards exist. It's a framework to determine whether, under the totality of the circumstances, the officer had a reasonable belief that his life was in jeopardy. And the totality of the circumstances that we have here are that a traffic stop, a lawful traffic stop was initiated, the officer pulls him over, the officer pauses in the BWC footage because he sees Mr. Dink moving around in the vehicle as if he was placing things from one seat to another seat. Then he walks up to the vehicle, he looks in, he sees a meth pipe, he sees a gun. He looks at Mr. Dink and he says, do not move, put your hands on the steering wheel, or do not reach for the gun, put your hands on the steering wheel. Approximately six seconds pass between the time that he gives that initial order to the time of the shot. Now, six seconds may seem like it's a very short amount of time, but I can put my hands up and down off the steering wheel 12 times in six seconds. What does the video show about the length of time between the hands sliding back and the shot? The hand slides back and then the shot is very quickly after that. I don't know the exact timing, maybe a second after that. Because as the hand is sliding back, that's when Sergeant Miller thinks in his mind, he's reaching for the gun, I need to shoot it, so he has to process that information for a split second, and then he starts to pull the trigger. Now, in that time, he also tried to issue a second warning, but he didn't get the warning entirely out before the shot struck Mr. Dink. If the court does not convince that Sergeant Miller's actions were reasonable, it can still find that there was no clearly established law here. Dink bears the burden to show what the clearly established law is that Sergeant Miller violated. He cites to no cases in his briefing that even come close to the facts of our case. As the Supreme Court has stated, a right is clearly established only if, at the time of the challenge conduct, it was sufficiently clear that every reasonable official would have understood that what he is doing violates that right. And as the court is well aware, the right cannot be a broad general proposition like the right to be free from excessive force. It needs to be specific or particularized. Now, the district court here erred in characterizing the right as shooting a non-resisting, non-fleeing suspect before the suspect has a chance to comply with an officer's warning. She then cites to the case AKH v. City of Tustin. And if you look at her order, she states the facts of this case are indistinguishable from AKH. Well, with all due respect to the district court, that's just simply not true. The main difference between that case and this case is that Mr. Denk was armed. The person in AKH who got shot was not armed, and there was nothing within reach. So, yes, shooting we agree that shooting a non-resisting, non-fleeing unarmed suspect who was not reaching towards a weapon would be a violation of clearly established law. But here, that's not the case we have. He was armed. The gun was within inches of his hand. He made a furtive movement in its direction. And Sergeant Miller feared for his life in that moment and shot him. The appellee made an argument that maybe this court does not have jurisdiction. I'm not going to spend a lot of time on that, but we are not asking this court to make any factual determinations. This is completely unlike the cases that were cited in the answering brief. We're not asking the court to make a factual finding that officers weren't at the scene. We're not asking the court to make any factual findings. We're only asking this court to apply the Ninth Circuit and U.S. Supreme Court case law to the facts that exist. And in this case, one of the facts that exist are the plaintiff's admissions, Mr. Dank's admissions. And this court has said that under Rule 56, a court should not blind itself to a plaintiff's admissions. And here, essentially, that's what the district court did. It glossed over the fact that Mr. Dank had already admitted twice at his criminal trial testimony where he had the highest interest in telling the truth and in his civil deposition testimony multiple times where he agreed that what he remembered doing was sliding his hand backwards towards his crotch area. Counsel, let me change the facts up just a little and see if it would change your reasoning. What if the facts had been that Mr. Dank said, officer, I have a gun, and started to move his hand in the manner that it's alleged he did here? Would that change the scenario materially? I think it would depend on a few things, Your Honor. One, whether Sergeant Miller had already given his warning of put your hands on the steering wheel and don't reach for it before he started his movement. And also, I think, I mean, it might be a closer case because by verbalizing that he has a gun, at least he's signaling maybe he's trying to put the officer on notice. But again, what reasonable person says, I have a gun in front of an officer and then reaches towards it? It's just a, any police officer, any reasonable police officer in Sergeant Miller's position would have pulled the trigger in this case because it's not just the fact that he had a gun. It's the fact that he disobeyed his command to put his hands on the steering wheel and then instead started reaching towards it. It's not just having a gun. I see my two minutes are down. So unless there are any questions, I'll reserve the rest of my time for rebuttal. Thank you, counsel. Thank you.  May it please the Court, my name is Jacquees Blackwell. I represent myself and Ms. Bernard represent Mr. Samuel Dink in this matter. And, Your Honor, if you don't have any questions, I want to just hit one thing. We don't believe that this Court has jurisdiction because based on me listening to Ms. Sheridan, the defense or the appellant is still arguing over disputed facts. It is disputed. Yes, Your Honor. So she said the fact was undisputed that he reached back toward the area where the gun was. Do you take issue with that? Absolutely, Judge. My client, Mr. Dink, Samuel Dink, he stated that his hand at trial moved back towards his crotch. But what he meant was that he moved his hand back towards the seat belt. When everybody watches the video, and that's one of the reasons he wasn't convicted other than the fact that when Sergeant Miller testified, he was up there looking at the screen, watching Mr. Dink's hands raise up as he was shot. Everybody saw it. And that's why we won that case. And in this particular case. But he did say that he reached back toward his crotch. That's the difficulty. He said that. And I believe that Ms. Sheridan, during the deposition, Mr. Dink also stated that he made a mistake, and he retracted that statement. If you look at the appellee's request to supplement the record. And I'll just go there briefly. And the reason I put it in there is this, Your Honors. Ms. Sheridan was at the deposition, and one of the first questions she asked Sam was, didn't you say at trial you moved your hand towards his crotch? He said yes. And then she asked, well, did you move your hand towards your crotch? He said yes. And I'm, like, thinking, sitting there waiting for my time to ask questions, just showing the video again. We showed the video, and he said, oh, my hand doesn't go towards my crotch. I actually moved my hand to the right. And when you watch the video, Your Honors, you see his hand move towards the right. And the reason that Sergeant Miller didn't shoot him is, Your Honor. The hand may move to the right, but it does move back. Absolutely, Judge. Absolutely. And when his hand moves back, Sergeant Miller doesn't shoot. His back is getting closer to the gun. Judge, I cannot disagree that if you move your hand when you're commanded to move your hand and you're sitting in a car, your hand may move back. Well, but that towards you, lifting your hands up to the steering wheel is moving it away from the gun. Moving either, you know, to the right but partly back is moving in the direction of the gun. It's reducing the space between the hand and the gun. Your Honor, I — Objectively, that's what it does. I would disagree because I've tried it myself. If you're sitting at your chairs, all three of you could sit at your chair right now and put your right hand on your knee, and you're sitting kind of slouched in a chair, and if you try to move your hand up, you're going to move it back just somewhat. And so all I'm saying is it is possible for you to be commanded to move your — put your hand on the steering wheel, and if you're sitting down with your hands on your knees, your hand may move back over so slightly. The video shows a portion of it going back without it visibly moving up. That is true, Your Honor. I do agree with that. And when that — But that's a problem, because if the hand is moving back without going up, that objectively is reducing the space to the gun and objectively looks like disobedience and looks like a better-life scenario. I would respectfully disagree with that statement, Judge, because it would be one thing if Sergeant Miller said, don't move your hands, and he moves his hands. And then he gets shot, and we're having this argument. That didn't happen. Sergeant Miller's first command was, do not touch that weapon. Put your hands on the steering wheel. And when he says, do not touch that weapon, Mr. Dink says, yes. Put your hands on the steering wheel. Mr. Dink says, okay. He moves his hand back to the right. He moves his hand back up on the second command. Put your hands on the — hands go up. Pow! Sergeant Miller shoots him. Sergeant Miller — if Sergeant Miller was afraid that Mr. Dink was going for his weapon, when he saw his hand move at all, Sergeant Miller already had his hand — his weapon was out, finger on the trigger. He didn't shoot Sam then. He shot Sam on the second command to put your hands on the steering wheel, and as Sam's hands raised up, he shot him before he finished his sentence. And I think what's telling of the situation is Officer Miller's statements after he shot him. He curses. He's not cursing because he was mad at Dink. He's cursing because, from our perspective, he didn't want to shoot him when he shot him because he saw his hands going up. When he pulls him out of the car, when you watch the video, there's a conversation between Sam and Sergeant Miller. And during that conversation, Sam says, why'd you shoot me? Sergeant Miller says, well, you moved your hand towards the weapon. And Sam says, no, I didn't. That was part of the call. I'm sorry, Judge. It seems to me that we're doing exactly what the Supreme Court doesn't want done. When it says you're not supposed to look at this in hindsight, overlook what's going on in the scene, we're taking six seconds and taking minutes to analyze it. Is that really appropriate? I think it's inappropriate for the appellant to tell this court in their opening brief that Sam never stated that he did not move his hand towards the weapon. That's inappropriate. I think what the Supreme Court wants us to look at is, and this Ninth Circuit looks at the fact that an officer may not use deadly force when the suspect appears to have been complying with the officer's order to show his hands, was not charging the officer, and was following all orders at the time the suspect was shot. But, counsel, the difficulty is that an officer looking at him could say that he wasn't following the orders because he moved his hand back. I understand that, Your Honor. But I would say I wouldn't have the best argument if Sergeant Miller actually shot Sam when he moved his hand at all. When his hand went back either towards the seat belt or, in Officer Miller's belief, it moved towards his crotch. If Sam would have been shot right then, it takes away the argument that the sergeant's actions were objectively unreasonable. I believe the sergeant's actions were objectively unreasonable because he didn't shoot Sam when his hand moved. He shot Sam, I'm sorry, when Sam's hands were going up. The period of time had elapsed between the time the hand moved back toward the gun and he was shot. It was mere seconds, right? Less than mere seconds. Between the commands, it was less than three seconds, the first command and the second command. So between the time the hand went back and the time he was shot. It was over a second. It was, yeah. So it was at least a second. So the issue is, and there's a case in the Ninth Circuit that states that the officer has to at least give the individual a time to comply with the order. If Sergeant Miller gives a second command to put his hands on the steering wheel, Sergeant Miller is looking at the situation. The body-worn camera is only showing us what we can see. Sergeant Miller doesn't shoot Sam at that moment. Sergeant Miller shoots Sam after his hands are raised. And so the appellant wants you to believe that, wants us to go into Sergeant Miller's mind. We cannot go into his mind. That's why this situation should go to the jury because we believe the district court got it right. The district court used the Garner case as well as AKH. And in those cases, this is a situation where it speaks for itself. It's obvious that if you watch the video, Sam's hands were going up when he was shot. When his hands go up when he's shot, he doesn't have a weapon in his hand. He's unarmed. His left hand is sitting on the window sill. His right hand is on his knee. And when he says, put your hands on the steering, and shoots him, his hands are almost on the steering wheel, and he gets shot. The Supreme Court has told us that we have to, that there has to be a case with similar facts that would put the officer on notice that what he has done violates the person who shot constitutional rights. What case, in your view, is sufficiently similar that it would put any officer on notice that this shooting was unconstitutional? Well, Judge, I believe this is an obvious case that the sentence set forth in Garner and Graham can clearly establish the answer without even, without a body of relevant case law. But we do have case law in the Ninth Circuit. I was going to say, if we disagree with you regarding whether this is an obvious case, then what case do you have that would have put the officer on notice? Hayes v. City of, County of San Diego, 736 F. 3rd, 1223, Ninth Circuit case from 2013. Hayes v. County of San Diego, 736 F. 3rd, 1223. And is that 1233? In this case, Judge, we, again, I think the issue still is a factual issue. Even if, we are not conceding that Sam moved his hand towards his crotch. And say he testified at trial that he didn't, that he believes he moved his hand to the right. We still have the officer shooting him. We still, I think we still would be here because I think the appellant would still disagree with the court, with the lower court's ruling as it pertains to whether or not Sergeant Miller had qualified immunity. And in this case, I think if you, I can give numerous hypotheticals. If I had a gun on my waist and my arms were folded and Sergeant Miller told me, don't move my hand towards my weapon. He says, don't move my hand towards my weapon. And I move my hand towards my belly. He shoots me. Qualified immunity, I believe, would apply. If he says, raise your hands up. He doesn't say, don't move your hands. He says, raise your hands up in the same hypothetical. But my right hand, before I raise my hands up, goes down ever so gently. If I get shot, then I don't believe qualified immunity applies. It's a close call. But when my hand goes down, he doesn't shoot me, and my hands go up and I get shot, qualified immunity should not apply because at that moment when I'm getting shot, I'm not posing a threat. Again, I believe the case law is on point as it pertains to whether or not Sergeant Miller has qualified immunity in a case where an individual's hands are going up as commanded. Sergeant Miller is the one who escalated everything in this case. If you look back, yes, Your Honor. Your case would be stronger if his hand hadn't gone back first. So if the hands, the only motion that was made was toward the steering wheel, then your case would be much stronger. The complicating fact is that the hand went back first. I understand the complicated nature of what happened in this case. But I respectfully disagree as it pertains to as complicated as it pertains to qualified immunity because our client gets shot when his hands are going up. But the problem is it's so fast that when you take into account reaction time, once the hand goes back before going up, it's just too short. I mean, is the officer supposed to bet his life on whether or not he's going to raise the hand or grab the gun? That's basically what the scenario is. Well, I think if the officer, the problem is in this case we can see that Sam didn't grab the weapon. We can see that the officer even gave Sam an opportunity to comply because he gave him a second command. Let's say the officer didn't give the second command and he still shot Sam and we still have the same video. We still see Sam's hands going up and he's shot without the second command. I believe their argument would be better then because there's no second command. That means that Sergeant Miller doesn't have that wherewithal to give him an opportunity to raise his hands and then he's shot. I think when he's shot, he actually flinched. When Sam's hands go up, the officer actually, from my perspective, he flinches, pulls the trigger because his finger's already on the trigger when he sees his hand going up. If he had made the decision to shoot him when he actually saw his hand, he would have shot him right then and there. He would not have given him the second command. Counsel, in the Hayes case, there was no command given. Is that correct? Yes, Your Honor. But then that case isn't similar factually to this case, sufficiently similar. And there was a knife as opposed to a gun. They were further apart. So I'm not sure that this case is sufficiently similar to constitute a notice to officers that this conduct in this case would be unconstitutional. Well, Judge, I think the quintessential issue here is that I don't believe the court should try to answer as a matter of law in a situation where their facts are specifically tailored to what happened in this particular case. I think in this particular case, any officer out there since 1985 knows that you shouldn't shoot an individual who's not posing a threat at the moment you shoot him. The problem is the individual has a gun in his lap. You pull him over and you come up. That's an unusual situation that the gun is right there. You think they would have at least put the gun off to the side before, you know, once you're pulled over and you know an officer is going to go. But the gun is there in the lap. That is an objectively threatening situation to start with. But it's not illegal. And at the trial, he explained why he had his gun in his lap. He explained that he put it there because he had been pulled over before, reaching for his gun to make sure the officer could see the gun, and the officer slapped him, didn't slap him, but got on him about that. Don't go for a gun when we're walking up. And so he didn't do that again. He just had it in his lap when he was driving, didn't move the gun, and knew that the officer should see the gun when the officer got there. I see I've run out of time. You've exceeded your time. Thank you, Judge. Thank you. Rebuttal. Thank you, Your Honors. I just want to make the point. The point that was just made about another officer pulling him over, that's not in the record. So I would ask this Court to disregard it. Your Honor, you pointed out exactly the problems with Hayes that I was about to point to. So we are now left with Mr. Blackwell and Mr. Denk have pointed to no established law that would have put Sergeant Miller on notice that his behavior was unconstitutional. And I was a little confused by counsel's argument, because in one sense he says, well, we would have been better off if we had shot him sooner. But at the same time, everything did unfold very quickly. It was a rapidly tense, evolving situation. By the time, supposedly, I mean, and everyone who looks at this video, I'll tell you, sees something a little different. So I've had people say they believe, yes, they see the backwards motion. People say, yes, they believe they see hands go up at some point. I've had people say, no, I never really quite see either one. So I don't believe the BWC is helpful here. So what we're going to do is address the argument that we don't have appellate jurisdiction, there's a fact issue. Oh, I don't believe there's a fact issue. We can take all of those facts in all in the plaintiff's favor, and this Court should still find that there was no clearly established law and that Sergeant Miller's actions were objectively reasonable whenever there is a gun within the vicinity. And he wants to make a deal out of him not being armed. I think the video is very important on the jurisdictional issue because the district court says that there's a triable issue of fact, which would trigger the Johnson v. Jones or Jones, whichever it is, jurisdictional problem. But we said in the State of Anderson in footnote 3 that Scott v. Harris is an exception to that, and you can take the video, even if the district court gets the video wrong, and you can take the video and say it's on the video. And so I'm not sure that you can say that the video doesn't matter to this case. And even if the court wants to take the video into account, and even with all of those facts going directly in Mr. Dank's favor, based on precedent from this Court and the Supreme Court, Sergeant Miller still acted reasonably, and there's still no established case law which would put him on notice. Maybe even if he acted unreasonably, there is no established case law that would have put him on notice. Yes, Your Honor, I misspoke. So either we believe either prong is met here. We believe he acted reasonably because Mr. Dank had a gun in his lap within inches of his hand, and his hand was sliding around, whether it went right, whether it went back, whether eventually it went up. The point is that he sees it going towards the area where a gun is located, and he reacted. He pulled the trigger to make sure that he could go home to his wife and kids that night. Sotomayor, you've exceeded your time. Thank you, Your Honor. Thank you to both counsel for your helpful arguments. The case just argued and submitted for decision by the Court.
judges: RAWLINSON, COLLINS, Fitzwater